O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

STEVEN HOWSE, et al.,

                              Plaintiffs,

        v.

CHIQUITA CANYON, LLC, et al.,

                              Defendants.

Case No.:  2:23-cv-08380-MEMF-MAR

Related Cases to be consolidated for pre-trial purposes:
    2:24-cv-03531-MEMF-MAR
    2:24-cv-04188-MEMF-MAR
    2:24-cv-06127-MEMF-MAR
    2:24-cv-05910-MEMF-MAR
    2:24-cv-05715-MEMF-MAR
    2:24-cv-05921-MEMF-MAR
    2:24-cv-02444-MEMF-MAR
    2:24-cv-05885-MEMF-MAR
    2:24-cv-09152-MEMF-MAR
    2:24-cv-05883-MEMF-MAR
    2:24-cv-05679-MEMF-MAR
    2:24-cv-06966-MEMF-MAR
    2:24-cv-07519-MEMF-MAR
    2:24-cv-08342-MEMF-MAR
    2:24-cv-06358-MEMF-MAR
    2:24-cv-09296-MEMF-MAR
    2:24-cv-09421-MEMF-MAR
    2:24-cv-08582-MEMF-RAO
    2:24-cv-04600-MEMF-MAR

**ORDER GRANTING IN PART MOTIONS TO CONSOLIDATE CASES FOR PRETRIAL PURPOSES, GRANTING REQUEST FOR JUDICIAL NOTICE, GRANTING IN PART MOTION TO DISMISS, CREATING CONSOLIDATED ACTION WITH NEW CAPTION, AND STAYING CONSOLIDATED ACTIONS [ECF Nos. 75, 76, 77]**

Before the Court are (1) a Motion to Consolidate Cases filed by Defendants Chiquita Canyon

Inc.; Chiquita Canyon, LLC; and Waste Connections US, Inc. (ECF No. 77); (2) a Motion to

Dismiss filed by Defendants Chiquita Canyon Inc.; Chiquita Canyon, LLC; and Waste Connections

US, Inc. (ECF No. 75); and (3) a Request for Judicial Notice filed by Defendants Chiquita Canyon

Inc.; Chiquita Canyon, LLC; and Waste Connections US, Inc. (ECF No. 75). For the reasons stated

herein, the Court GRANTS IN PART the Motion to Consolidate Cases, GRANTS the Request for

Judicial Notice, and GRANTS IN PART the Motion to Dismiss.

**BACKGROUND**

**I.      Factual Allegations as to this Action[1]**

Defendant Chiquita Canyon, LLC ("Chiquita LLC") is a Delaware limited liability company

with its principal place of business in Texas. *See* TAC ¶ 14. Defendant Chiquita Canyon, Inc.

("Chiquita Inc.") is a Delaware Corporation with its principal place of business in Texas. *See id.* ¶

15. Defendant Waste Connections US, Inc. ("Waste Connections," or collectively with Chiquita

LLC and Chiquita Inc., "Defendants") is also a Delaware Corporation with its principal place of

business in Texas. *See id.* ¶ 16.

Defendants operate a landfill located in Castaic, California (the "Landfill"). *See id.* ¶ 19.

Plaintiffs in this Action (the "Howse Plaintiffs") are approximately 946 residents[2] living around the

Landfill. *See id.* ¶ 13.

Waste Connections is the sole owner of Chiquita Inc. *See id.* ¶ 17. Chiquita Inc. is the sole

member of Chiquita LLC. *See id.* ¶ 18. Waste connections exercises significant control over

Chiquita LLC and Chiquita Inc. *See id.* ¶ 20. These entities had a unity of ownership and share their

---

[1] The following allegations are derived from the Howse Plaintiffs' Third Amended Complaint. ECF No. 74 ("TAC"). For the purposes of the Motion to Dismiss, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they are true.

In the hearing, Defendants stressed that they vigorously dispute the allegations and intend to prove their falsity. Defendants urged the Court, to the extent that it affected the Court's ruling, to not treat the allegations as true for the purpose of analyzing the Motion to Consolidate. Defendants acknowledged, however, that they understood that the Court must treat the allegations as true in analyzing the Motion to Dismiss.

[2] The Court will not list out each individual Howse Plaintiff's name given the number of plaintiffs.

2

principal office and executive management team. *See id.* ¶¶ 21–28. The three Defendants present themselves to the public as one entity. *See id.* ¶ 22. Some individuals who operate the Landfill and appear in public to discuss the Landfill are employees of Waste Connections and not of Chiquita LLC or Chiquita Inc. *See id.* ¶¶ 29–32.

The Landfill is located next to or nearby several towns and residential areas, where thousands of people live. *See id.* ¶¶ 36–37. The Landfill is also located near a commercial area which has businesses and a post office. *See id.* ¶ 38.

The land that would become the Landfill was approved for land reclamation by the County in 1965. *See id.* ¶¶ 49. The landfill is near several neighborhoods that were settled long before that time, and since the landfill was approved, more neighborhoods have been developed nearby. *See id.* ¶¶ 39–48. In 1982, the Landfill obtained a Conditional Use Permit ("CUP") which permitted the Landfill to operate under certain conditions until 1997. *See id.* ¶ 50. In 1997, the Los Angeles County Board of Supervisors issued a new CUP which allowed the Landfill to operate until either November 2019 or when the landfill reached 23,000,000 tons, whichever came first. *See id.* ¶ 53.

Waste Connections purchased the Landfill through its subsidiary Chiquita Inc. in 2009. *See id.* ¶ 56. Thereafter, Chiquita Inc. was identified as the operator of the Landfill on public documents until 2017, when it was replaced by Chiquita LLC. *See id.* ¶ 57.

In 2011, Defendants began applying for permits to again extend the Landfill's operation. *See id.* ¶ 58. Residents in the area opposed the extension. *See id.* ¶ 62. In 2015, as the Landfill was nearing its 23,000,000 ton limit, a Director of Planning for the Los Angeles County Department of Regional Planning granted Defendants a waiver that would allow the Landfill to reach up to 29,400,000 tons. *See id.* ¶ 65. The Landfill passed the 23,000,000 ton limit in Spring of 2016 but continued to operate pursuant to the waiver. *See id.* ¶ 66. In 2017, the Landfill received an additional new CUP, which allowed it to continue operating for 30 more years and expand its disposal area from 149 acres to a total area of 400 acres. *See id.* ¶¶ 68, 69. The Landfill is currently permitted to intake 1,800,000 tons per year (approximately 35,000 tons per week) of various forms of waste. *See id.* ¶ 71. The CUP requires Defendants to operate the Landfill in compliance with all applicable laws, statutes, etc. *See id.* ¶ 73. It also requires Defendants not to create a "nuisance in the

surrounding communities, and to conduct monitoring of the air and gas to ensure the Landfill meets certain specifications. *See id.* ¶¶ 74, 75. Defendants must "use Landfill gas for energy generation at the Facility or other beneficial uses, rather than flaring to the extent feasible." *See id.* ¶ 76. TheLos Angeles Department of Regional Planning or the Los Angeles County Department of Public Health may terminate the Landfill's operations if either determines that doing so is "necessary for the health, safety, and/or welfare of the County's residents or the environment." *See id.* ¶ 78.

In approximately May of 2022, a "Subsurface Reaction" began to occur in an inactive portion of the Landfill, which is "characterized by extreme temperature increases, excessive leachate production, and a change in composition and volume of the landfill gas." *See id.* ¶ 79. The surrounding community was not notified, and this continued for a year until odors alerted people that something unusual was occurring. *See id.* ¶¶ 80, 81.

The Landfill naturally produces "landfill gas," which is collected and sent to a company that uses it to generate electricity. *See id.* ¶¶ 82–84. In January of 2023, that company shut down its energy plant after discovering high levels of sulfur in the landfill gas from the Landfill. *See id.* ¶ 85. The following day, Chiquita LLC ran tests and found elevated levels of sulfur and dimethyl sulfide. *See id.* ¶ 86. Defendants sought an emergency variance from the local air quality regulator in response in order to continue operations, and the regulator granted the variance in February of 2023. *See id.* ¶¶ 88–95. The variance came with conditions, including that Chiquita LLC provide an analysis of the previous twelve months of landfill gas. *See id.* ¶ 97. Defendants failed to provide this analysis, which the regulator noted, but the regulator issued an additional variance allowing the Landfill until February of 2024 to come into compliance. *See id.* ¶¶ 98–101.

Since then, the local air quality regulator has issued hundreds of violations to Defendants based on elevated levels of sulfur and dimethyl sulfide. *See id.* ¶¶ 103–117. On July 26, 2023, the Los Angeles County Department of Public Health issued a notice to Waste Connections that the Landfill was a public nuisance in violation of California law. *See id.* ¶ 117. A few weeks later, the Los Angeles County Department of Regional Planning issued a notice of violation to Chiquita LLC indicating the Landfill was in violation of the CUP. *See id.* ¶ 118. After a hearing, the local air regulator issued an order of abatement to Chiquita LLC. *See id.* ¶¶ 119–122. In October of 2023, a

branch of the California Environmental Protection Agency issued a report finding numerous issues at the Landfill over the previous 18 months, including elevated temperatures and high concentration of carbon monoxide. *See id.* ¶ 123. Further investigation by various agencies also revealed that the Landfill had issues with leachate collection, that leachate production had increased, and leachate seepage had occurred. *See id.* ¶¶ 124–129. Regulators also observed "geysers of leachate erupting from the surface" of the Landfill as high as 18 feet in the air and leachate "boiling" in pools. *See id.* ¶ 125. Defendants had been required to maintain a leachate collection system, and Defendants had not notified regulators of any issues. *See id.* ¶¶ 129, 130. Further, in order to deal with the leachate, Defendants shipped leachate (which they knew contained toxic chemicals) to a company that did not have means to properly dispose of it. *See id.* ¶¶ 133–138. The California Depart of Toxic Substances Control issued a notice of violation of Chiquita LLC for this shipping of leachate in February of 2024. *See id.* ¶ 139. After this, Defendants stored the toxic leachate onsite and attempted to treat it themselves. *See id.* ¶ 141. Unable to handle it all, Defendants illegally dumped some leachate into the Santa Clara River. *See id.* ¶ 142. The local Water Board issued Defendants a notice of violation for this dumping in April of 2024. *See id.* ¶ 144. Other agencies have since sanctioned Defendants. *See id.* ¶¶ 145–148.

The Howse Plaintiffs suffered various harm from the issues described above. *See id.* ¶¶ 149–156. The Howse Plaintiffs suffered headaches, nosebleeds, respiratory issues, heart issues, and other health issues. *See id.* ¶ 150. The Howse Plaintiffs were forced at times to remain inside and forgo use of the yards to avoid noxious odors and health effects. *See id.* ¶ 151. The Howse Plaintiffs were forced to keep windows and doors closed to remain safe. *See id.* ¶ 152. The Howse Plaintiffs experienced distress on a regular basis regarding possible exposure, and worried that small stints outside (e.g., to mow a lawn) would have unknown health impacts. *See id.* ¶ 153. The Howse Plaintiffs were embarrassed and unable to invite guests to their homes. *See id.* ¶ 153. The value of the Howse Plaintiffs' homes has decreased. *See id.* ¶ 156. These harms continue on a daily basis. *See id.* ¶ 157.

/ / /

**II.** **Procedural History as to this Action**

The Howse Plaintiffs filed suit in Los Angeles County Superior Court on August 25, 2023. ECF No. 1-1.[3] The Howse Plaintiffs' initial complaint brought four causes of action against the Landfill Defendants and the County: private nuisance, public nuisance, negligence, and trespass. *See* ECF No. 1-1. The Howse Plaintiffs brought a class action on behalf of themselves and others similarly situated. *See id.* Per the Howse Plaintiffs' initial complaint, the putative class was: "All persons who rented or were owner-occupants of any housing unit located in whole or in part within the Class Area[4] at any time since 1972." *Id.* ¶ 92.

Defendants removed to this Court on October 4, 2023. ECF No. 1. Defendants asserted this Court has subject matter jurisdiction over the action based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

On December 4, 2023, after the action had been removed, the Howse filed a First Amended Complaint ("FAC"). *See* ECF No 26. The FAC included only three causes of action against the Landfill Defendants and the County (dropping the trespass claim): private nuisance, public nuisance, and negligence. *See Id.* The FAC also changed the class definition—per the FAC, the putative class was: "Residents in the Class Area[5] who rented or were owner-occupants of any housing unit located in whole or in part within the Class Area during 2023 who have had Landfill gases interfere with their use and enjoyment of their home."

The Howse Plaintiffs filed a Motion to Remand on January 9, 2024, which Defendants opposed. *See* ECF Nos. 49, 51. The Howse Plaintiffs withdrew their Motion to Remand on April 17, 2024. *See* ECF No. 60. The Howse Plaintiffs then filed a Second Amended Complaint ("SAC") pursuant to stipulation. *See* ECF No. 71. The SAC included three causes of action: (1) private

---

[3] Where the Court references an ECF Number without providing a specific case number, the Court is referring to the docket of the instant action, *Steven Howse et al v. Chiquita Canyon, LLC et al*, Case No. 2:23-cv-08380.

[4] The "Class Area," in the initial complaint is an area that "includes the Val Verde, Hasley Hills, Hasley Canyon, Hillcrest, Live Oak and Williams Ranch neighborhoods." ECF No. 1-1 ¶ 92.

[5] The "Class Area" in the FAC is an area that "includes residences within 4 miles of the Landfill including the Val Verde, Hasley Hills, Hasley Canyon, Hillcrest, Live Oak and Williams Ranch neighborhoods." FAC ¶ 86.

nuisance, (2) negligence, and (3) negligence per se. *See id.* The SAC was brought as an individual action on behalf of the then 731 named plaintiffs and was not brought as a class action, and so it included no class definition. *See id.*

The Howse Plaintiffs filed their operative TAC on June 19, 2024. *See* ECF No. 74. The TAC includes two causes of action, the second of which has two subparts: (1) private nuisance, (2)(A) negligence, and (2)(B) negligence per se. *See id*. The TAC was brought by approximately 946 residents. *See id.*

### III.    <u>Other Related Actions</u>

Many other plaintiffs have filed actions that appear to have some degree of factual overlap with this action, and that are now pending before this Court. The Court will note each such action below:

1.  *Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531. Filed in Los Angeles County Superior Court on March 27, 2024, and removed to this Court on April 29, 2024. *See Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531, ECF No. 1 (C.D. Cal. Apr. 29, 2024). Fifty-one plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and additional Defendant Waste Connections of California ("WCC"). *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

2.  *Robert Aleksanyan et al v. Chiquita Canyon LLC et al*, Case No. 2:24-cv-04188. Filed in this Court on May 20, 2024. *See Robert Aleksanyan et al v. Chiquita Canyon LLC et al*, Case No. 2:24-cv-04188, ECF No. 1 (C.D. Cal. May 20, 2024). Five plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. *See id.* They assert three causes of action: (1) public nuisance; (2) private nuisance; and (3) negligence / gross negligence. *See id.*

3.  *Claudia Rivera et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06127. Filed in Los Angeles County Superior Court on June 24, 2024, and removed to this Court on July

22, 2024. *See Claudia Rivera et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06127, ECF No. 1 (C.D. Cal. July 22, 2024). 313 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

4. *Quaiden Fenstermaker et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05910. Filed in Los Angeles County Superior Court on May 29, 2024, and removed to this Court on July 13, 2024. *See Quaiden Fenstermaker et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05910, ECF No. 1 (C.D. Cal. Jul. 13, 2024). 212 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

5. *Geon Hwang et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05715. Filed in this Court on July 8, 2024. *See Geon Hwang et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05715, ECF No. 1 (C.D. Cal. Jul. 8, 2024). 51 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and additional Defendant Waste Connections Management Services, Inc. ("WCMS"). *See id.* They assert three causes of action: (1) public nuisance; (2) private nuisance; and (3) negligence / gross negligence. *See id.*

6. *Briana Mejia et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05921. Filed in Los Angeles County Superior Court on May 30, 2024, and removed to this Court on July 15, 2024. *See Briana Mejia et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05921, ECF No. 1 (C.D. Cal. Jul. 15, 2024). 238 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4)

private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—
continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

7. *John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444. Filed in Los
Angeles County Superior Court on February 2, 2024, and removed to this Court on
March 25, 2024. *See John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-
02444, ECF No. 1 (C.D. Cal. Mar. 25, 2024). 48 plaintiffs bring suit against Chiquita
LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert eight causes of
action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous
activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public
nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

8. *Jolene Acosta et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05885. Filed in Los
Angeles County Superior Court on May 29, 2024, and removed to this Court on July 12,
2024. *See Jolene Acosta et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05885,
ECF No. 1 (C.D. Cal. Jul. 12, 2024). 276 plaintiffs bring suit against Chiquita LLC,
Chiquita Inc., and Waste Connections. *See id.* They assert eight causes of action: (1)
negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4)
private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—
continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

9. *Scott Benjamin Siegal*[6] *et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09152.
Filed in Los Angeles County Superior Court on July 16, 2024, and removed to this Court
on October 23, 2024. *See Scott Benjamin Siegal et al v. Chiquita Canyon, LLC et al*, Case
No. 2:24-cv-09152, ECF No. 1 (C.D. Cal. Oct. 23, 2024). 236 plaintiffs bring suit against
Chiquita LLC; Chiquita Inc.; Waste Connections; additional Defendant Ameresco
Chiquita Canyon Energy LLC ("Ameresco"); additional Defendant Stearns, Conrad, and

---

[6] The Court notes that Scott Benjamin Siegal—the first named plaintiff in the *Siegal* action, Case No. 2:24-cv-09152-MEMF-MAR—is also a named plaintiff in the *Hwang* action, Case No. 2:24-cv-05715. *See Geon Hwang et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05715, ECF No. 1 (C.D. Cal. Jul. 8, 2024). The Court has not performed a comprehensive review of the extent to which the named plaintiffs in these suits overlap.

Schmidt Consulting Engineers, Inc. ("SCS Engineers"), and additional Defendant Ultrasystems Environmental, Inc. ("Ultrasystems"). *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

10. *Isabell Dolores Palomino et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05883. Filed in this Court on July 12, 2024. *See Isabell Dolores Palomino et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05883, ECF No. 1 (C.D. Cal. Jul. 12, 2024). 46 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. *See id.* They assert three causes of action: (1) public nuisance; (2) private nuisance; and (3) negligence / gross negligence. *See id.*

11. *Adams T. Evans et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05679. Filed in Los Angeles County Superior Court on April 15, 2024, and removed to this Court on July 5, 2024. *See Adams T. Evans et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05679, ECF No. 1 (C.D. Cal. July 5, 2024). 23 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

12. *Anabel Austin et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06966. Filed in Los Angeles County Superior Court on July 9, 2024, and removed to this Court on August 16, 2024. *See Anabel Austin et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06966, ECF No. 1 (C.D. Cal. Aug. 16, 2024). 76 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert nine causes of action: (1) negligence; (2) negligence per se; (3) trespass; (4) continuing private nuisance; (5) permanent private nuisance; (6) continuing public nuisance; (7) permanent public nuisance; (8) violation of Health and Safety Code section 41700; and (9) strict liability for ultrahazardous activities. *See id.*

13. *Melineh Gasparians et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-07519. Filed in Los Angeles County Superior Court on June 10, 2024, and removed to this Court on September 4, 2024. *See Melineh Gasparians et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-07519, ECF No. 1 (C.D. Cal. Sep. 4, 2024). Eleven plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

14. *Kaden Alim et al v. Chiquita Canyon, LLC et al*, 2:24-cv-08342. Filed in this Court on September 27, 2024. *See Kaden Alim et al v. Chiquita Canyon, LLC et al*, 2:24-cv-08342, ECF No. 1 (C.D. Cal. Sep. 27, 2024). 94 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

15. *Alejandra Suarez et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06358. Filed in Los Angeles County Superior Court on June 20, 2024, and removed to this Court on July 29, 2024. *See Alejandra Suarez et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06358, ECF No. 1 (C.D. Cal. Jul. 29, 2024). 138 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., and Waste Connections. They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) private nuisance—continuing; (5) private nuisance—permanent; (6) public nuisance—continuing; (7) public nuisance—permanent; (8) trespass. *See id.*

16. *In Re Serieddine Consolidated Actions*, Case No. 2:24-cv-09296. 359 complaints were filed in Los Angeles County Superior Court and all served on September 30, 2024. *See In Re Serieddine Consolidated Actions*, Case No. 2:24-cv-09296, ECF No. 1 (C.D. Cal. Oct. 28, 2024). Those actions were consolidated by the Los Angeles County Superior Court

on October 2, 2024, and then removed to this Court on October 28, 2024. *See id.* There are 416 plaintiffs in total, and they brought suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert three causes of action: (1) public nuisance; (2) private nuisance; and (3) negligence / gross negligence. *See id.*

17. *Alina Hakopyan et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09421. Filed in Los Angeles County Superior Court on August 6, 2024, and removed to this Court on October 31, 2024. *See Alina Hakopyan et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09421, ECF No. 1 (Oct. 31, 2024). Nine plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) continuing private nuisance; (5) permanent private nuisance; (6) continuing public nuisance; (7) permanent public nuisance; and (8) trespass. *See id.*

18. *Nicholas Difatta et al v. Chiquita Canyon, LLC et al*, Case 2:24-cv-08582. Filed in this Court on October 4, 2024. *See Nicholas Difatta et al v. Chiquita Canyon, LLC et al*, Case 2:24-cv-08582, ECF No. 1 (C.D. Cal. Oct. 4, 2024). 48 plaintiffs bring suit against Chiquita LLC, Chiquita Inc., Waste Connections, and WCC. *See id.* They assert eight causes of action: (1) negligence; (2) negligence per se; (3) strict liability for ultrahazardous activities; (4) continuing private nuisance; (5) permanent private nuisance; (6) continuing public nuisance; (7) permanent public nuisance; and (8) trespass. *See id.*

19. *Serenity Araiza et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-04600. Filed in this Court on June 3, 2024. *See Serenity Araiza et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-04600, ECF No. 1 (C.D. Ca. Jun. 3, 2024). 49 plaintiffs bring suit against Chiquita LLC, Waste Connections, and WCC. *See id.* They assert three causes of action: (1) public nuisance; (2) private nuisance; and (3) negligence / gross negligence. *See id.*

Pursuant to the Court's procedures for managing related cases, all of the actions listed above were transferred to Judge Frimpong after being filed in or removed to this Court.

On May 20, 2024, Defendants filed a Request for a Status Conference, seeking to discuss "(1) the setting of a uniform pleading and responsive pleading schedule for the Related Actions; and

(2) potential further consolidation and/or coordination of the Related Actions." *See* ECF No. 69. On May 24, 2024, the Court ordered Defendants to meet and confer with counsel for all other parties in the Related Actions and "file a joint status report setting forth the parties' proposed uniform pleading and responsive pleading schedule." *See* ECF No. 72. The Court explained that after receipt of this report, the Court would "determine whether a status conference is needed." *See id.* Defendants filed a status report on November 8, 2024. *See* ECF No. 89. The status report listed related cases (including cases that were in the process of becoming "related") but did not include a proposal except to reference the pending Motion to Consolidate. *See id.*

## IV.     **The Instant Motions**

Defendants filed the instant Motion to Dismiss on July 3, 2024. *See* ECF No. 75. Defendants also filed a Request for Judicial Notice in support of the Motion to Dismiss the same day. *See* ECF No. 76. The Howse Plaintiffs filed an Opposition to the Motion to Dismiss on July 17, 2024. *See* ECF No. 79. Defendants filed a Reply in support of their Motion to Dismiss on July 31, 2024.[7] *See* ECF No. 82. The Howse Plaintiffs filed a Notice of Supplemental Authority regarding the Motion to Dismiss on October 14, 2024. *See* ECF No. 88.

Defendants filed the instant Motion to Consolidate on July 11, 2024. *See* ECF No. 77. The Motion to Consolidate requests (1) that the Court consolidate the *Howse* Action (Case No. 23-cv-08380), the *Suggs* Action (Case No. 2:24-cv-02444), the *Siryani* Action (Case No. 2:24-cv-03531), and "any future related cases"[8]; (2) that the Court coordinate the pleading and discovery schedule in the consolidated case; (3) as part of (2), that the Court order the adoption of a master complaint; and (4) as part of (2), that the Court temporarily stay discovery. *See id.* The Howse Plaintiffs filed an Opposition to the Motion to Consolidate on July 25, 2024. *See* ECF No. 81. Defendants filed a Reply in support of their Motion to Consolidate on August 1, 2024. *See* ECF No. 85.

---

[7] Defendants initially filed an incorrect document in place of their Reply in support of their Motion to Dismiss, as clarified in a notice of errata. *See* ECF Nos. 82, 83. The erroneously filed document remains on the docket but has been placed under seal because it contained confidential information regarding an unrelated action. *See* ECF No. 87.

[8] The Court understands this—the request that Court consolidate "and any future related cases"—to be a request that all of the cases listed above be consolidated.

Defendants also filed Motions to Consolidate in parallel in the *Siryani* Action (Case No. 2:24-cv-03531) and *Suggs* Action (Case No. 2:24-cv-02444). *See Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531, ECF No. 25 (C.D. Cal. Jul. 11, 2024); *John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444, ECF No. 39 (C.D. Cal. Jul. 11, 2024). Plaintiffs in the *Suggs* Action oppose the parallel-filed Motion to Consolidate to the extent it requests a stay of discovery, but not otherwise. *See Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444, ECF No. 45 (C.D. Cal. Jul. 25, 2024).

The Court set a hearing on the Motion to Consolidate and Motion to Dismiss for November 14, 2024. *See* ECF No. 80. Defendants provided notice of this hearing to the parties in all of the other related cases, except for the *Siryani* Action (Case No. 2:24-cv-03531) and *Suggs* Action (Case No. 2:24-cv-02444), where the Court set hearings on the parallel motions to consolidate for the same date and time,[9] *See Robert Aleksanyan et al v. Chiquita Canyon LLC et al*, Case No. 2:24-cv-04188, ECF No. 23 (C.D. Cal. Nov. 8, 2024); *Claudia Rivera et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06127, ECF No. 13 (C.D. Cal. Nov. 8, 2024); *Quaiden Fenstermaker et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05910, ECF No. 17 (C.D. Cal. Nov. 8, 2024); *Geon Hwang et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05715, ECF No. 24 (C.D. Cal. Nov. 8, 2024); *Briana Mejia et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05921, ECF No. 14 (C.D. Cal. Nov. 8, 2024); *Jolene Acosta et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05885, ECF No. 17 (C.D. Cal. Nov. 8, 2024); *Scott Benjamin Siegal et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09152, ECF No. 15 (C.D. Cal. Nov. 8, 2024); *Isabell Dolores Palomino et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05883, ECF No. 22 (C.D. Cal. Nov. 8, 2024); *Adams T. Evans et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05679, ECF No. 17 (C.D. Cal. Nov. 7, 2024); *Anabel Austin et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06966, ECF No. 14 (C.D. Cal. Nov. 8, 2024); *Melineh Gasparians et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-07519, ECF No. 16 (C.D. Cal. Nov. 8, 2024); *Alejandra Suarez et al v. Chiquita Canyon, LLC et al*, Case

---

[9] *See Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531, ECF No. 27 (C.D. Cal. Jul. 18, 2024); *John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444, ECF No. 41 (C.D. Cal. Jul. 18, 2024).

No. 2:24-cv-06358, ECF No. 14 (C.D. Cal. Nov. 8, 2024); *In Re Serieddine Consolidated Actions*, Case No. 2:24-cv-09296, ECF No. 14 (C.D. Cal. Nov. 8, 2024); *Serenity Araiza et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-04600, ECF No. 21 (C.D. Cal. Nov. 8, 2024); *Alina Hakopyan et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09421, ECF No. 9 (Nov. 6, 2024); *Nicholas Difatta et al v. Chiquita Canyon, LLC et al*, Case 2:24-cv-08582, ECF No. 20 (C.D. Cal. Nov. 5, 2024); *Kaden Alim et al v. Chiquita Canyon, LLC et al*, 2:24-cv-08342, ECF No. 14 (C.D. Cal. November 12, 2024).

The Court held a hearing on the Motion to Consolidate and Motion to Dismiss on November 14, 2024. Present at the hearing were counsel for the Howse Plaintiffs, counsel for Defendants, and counsel for many of plaintiffs in the related cases.

## MOTION TO CONSOLIDATE (ECF NO. 75)

### I.     Applicable Law

Where cases "involve a common question of law or fact," Federal Rule of Civil Procedure 42(a) ("Rule 42(a)") allows a court to: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." *See* Fed. R. Civ. P. 42(a)(1)–(3). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S. Dist. Ct. for Cent. Dist. of California*, 877 F.2d 777, 777 (9th Cir. 1989).

Furthermore, district courts have "inherent power to control their dockets." *See United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008). This includes a "discretionary power to stay proceedings." *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).

### II.    Discussion

For the reasons discussed below, the Court (1) will consolidate the cases, (2) will order the filing of a master complaint, and (3) will order a brief stay of discovery.

### A.  The Court will consolidate all actions listed above for pretrial purposes.

First, the Court finds it appropriate to consolidate all of the actions regarding the Landfill listed above for pretrial purposes. The actions meet the standard of Rule 42(a), and the Court finds

that consolidation for pretrial purposes will be efficient to conserve the resources of the Court and all parties.

All of these cases involve at least one "common question of law or fact," if not many such questions. *See* Fed. R. Civ. P. 42(a). Namely, all of these suits involve common questions of what happened at the Landfill, the extent to which Defendants are responsible for what happened, whether the Landfill was a nuisance, and whether Defendants were negligent. Although the various actions involve some different claims, all of them relate to the series of events at the Landfill alleged by the Howse Plaintiffs, and all of them include a negligence cause of action and causes of action related to nuisance. Further, although there are distinct combinations of defendants in the various actions, all of them include at minimum Chiquita Inc. and Waste Connections as defendants. Finally, although the plaintiffs are distinct, the plaintiffs generally allege the same forms of harm from the same general course of conduct. All of these lawsuits will involve similar discovery as to the Landfill and the various defendants. This is more than sufficient to meet the standard of common questions of law and fact. Thus, Rule 42(a)'s standard is met. Thus, the Court "may" consolidate them.

The Court also finds that consolidation will be efficient. The various groups of plaintiffs will all need similar (if not the same) discovery, and it would be highly inefficient to require the plaintiffs to separately serve interrogatories, take separate depositions of the same witnesses, etc. It would also be inefficient to require defendants to respond to discovery separately. And it would be inefficient to require the Court to manage 20 separate actions involving the same basic discovery, and to potential handle separate motion practice on the same or very similar issues. Thus, the Court finds consolidation for pretrial purposes to be efficient, and the Motion is GRANTED to the extent that it requests this. The details of this consolidation will be discussed in further detail below.

**B.  The Court will not order the various plaintiffs to file one master complaint.**

In order to manage the docket in complex, consolidated actions, courts in some circumstances require the parties to file a master complaint. *See, e.g.*, *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1128 (9th Cir. 2002) (noting that a district court had "consolidated all of the Hanford-related actions and directed preparation of one consolidated complaint," but making no ruling on the issue); *McCarthy, v. Toyota Motor Corp.*, Case No. 8:18-cv-00201-JLS-KES, ECF No.

38 (C.D. Cal. Oct. 5, 2018) (granting a stipulation whereby the parties had agreed that the plaintiffs in a consolidated action would file a master complaint. As the Manual for Complex Litigation notes, "[e]stablishing a master file with standard pleadings, motions, and orders can be particularly helpful if the litigation will involve a number of actions filed, removed, or transferred over an extended period." Manual Complex Lit., § 22.632 (4th ed.).

Here, Defendants argue that the various plaintiffs should all be required to work together and file one master complaint.[10] Defendants argue that this would be efficient, as it would purportedly result in "single set of causes of action" which could be "challenged at one time, rather than inundating the court with sequential, nearly identical complaints and motions to dismiss." *See* ECF No. 77 at 17–18. In the alternative, Defendants request that the Court order a staged pleading schedule, where the Court first decides Defendants' pending Motion to Dismiss as to the *Howse* Action and allows other plaintiffs to amend their complaints with this guidance in mind.

The Howse Plaintiffs oppose this request, particularly to the extent that Defendants request that the master complaint supersede prior pleadings. *See* ECF No. 81. The Howse Plaintiffs argue that master complaint may be efficient for Defendants, but that it will shift the litigation burdens from Defendants to the various plaintiffs, who will need to undertake significant work to prepare the document. *See id.* at 9. The Howse Plaintiffs are concerned that as the largest group of plaintiffs, they and their counsel will be required to shoulder the bulk of the work. *See id.* The Howse Plaintiffs are also concerned that some plaintiffs may be required to compromise and include aspects they do not desire in the master complaint, which might prejudice their right to craft their own case. *See id.* The Howse Plaintiffs cite to nonbinding authority holding that the burden of showing that consolidation is on the party seeking to consolidate, and they argue that the same logic should apply

---

[10] As the Howse Plaintiffs note, it is unclear from Defendants' Motion what exactly Defendants are requesting, as master complaints can come in different forms. *See* ECF No. 81 at 7–8. A master complaint can "supersede prior individual pleadings," and be treated as the operative complaint for the duration of the action, or can be an "administrative summary of the claims brought by all the plaintiffs" that "is not meant to be a pleading with legal effect." *See Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 414 n.3 (2015). Defendants did not clarify the issue directly on their Reply, *see* ECF No. 85, but Defendants' focus on the benefit of streamlined motions to dismiss suggests that they request the former approach—that the master complaint should supersede prior complaints and be treated as the operative pleading, and that claims should be subject to dismissal as to all plaintiffs to the extent that the master complaint has deficiencies.

where a party seeks an order for a master complaint. *See Plan Adm'r of Chevron Corp. Ret.
Restoration Plan v. Minvielle*, Case No. 20-CV-07063, 2024 WL 1974544, *3 (N.D. Cal. May 3,
2024) ("The party seeking consolidation bears the burden of demonstrating that convenience and
judicial economy would result from consolidation.").

The Court will not order the plaintiffs to file one master complaint that will supersede all
previous complaints. Although it might create some efficiency gains with respect to motion practice,
the Court is concerned that this approach would unduly force the various plaintiffs to abandon
control of their individual strategies and potentially prejudice them. The plaintiffs have a right to
control their own cases, and the Court will not force all of them to make compromises with respect
to that control in order to amalgamate their various claims into one complaint for efficiency. The
Court finds this concern dispositive, and so need not reach the other arguments that Howse Plaintiffs
raise (e.g., concerns about free riding).

The Court also notes that the caselaw cited by Defendants does not demonstrate the courts
generally order plaintiffs to file a master complaint that supersedes previous complaints on facts
similar to those here, particularly where there is an objection to the master complaint. Defendants
cite first to *McCarthy, v. Toyota Motor Corporation*, where a court in this district ordered a master
complaint pursuant to a stipulation. *See McCarthy*, Case No. 8:18-cv-00201-JLS-KES, ECF No. 38
(C.D. Cal. Oct. 5, 2018). Here, the Howse Plaintiffs object to the master complaint and have not
stipulated to it, which is a significant distinction. Defendants also cite to *In re: Zimmer Nexgen Knee
Implant Products Liability Litigation*, where a court in the Northern District of Illinois order
plaintiffs to file a master complaint, but the record from that case does not demonstrate whether
there were objections to this master complaint. *See In re: Zimmer Nexgen Knee Implant Products
Liability Litigation*, Case No. 1:11-cv-05468, ECF No. 186 (N.D. Ill. December 19, 2011).
Similarly, Defendants cite to *Hanford*, where the Ninth Circuit noted that a district court had ordered
a master complaint, but the order does not reflect whether there were objections, and the decision did
not consider the propriety of the master complaint. *See Hanford*, 292 F.3d at 1128. On reply,
Defendants cited to *In re Katrina Canal Breaches Litigation.*, where the Fifth Circuit explained in an
unpublished and nonbinding opinion that the district court had ordered a master complaint over at

least one plaintiff's objection, and then dismissed claims via a judgment on the pleadings without considering the information in the originally-filed individual complaints. *See In re Katrina Canal Breaches Litig.*, 309 F. App'x 836, 837 (5th Cir. 2009). The Fifth Circuit found no error in this via its unpublished and nonbinding opinion. *See id.* This authority does not show that courts typically require master complaints that supersede prior pleadings over the objection of plaintiffs, and even if it did show that, none of it is binding. If anything, *Katrina Canal Breaches* shows the risks of such an approach—it appears that the plaintiff that brought the appeal suffered prejudice because the court forced him to consolidate his claims into a master complaint and some details he originally included were omitted, which led to those details not being considered on the motion for judgment on the pleadings.[11] *See id.* The Fifth Circuit's unpublished memorandum opinion finding no error in the district court's decision to ignore the original complaint after ordering a master complaint does not convince this Court that ordering a master complaint over a plaintiff's objection is the correct course of action in this case. *See id.* Nor do the other authorities cited.

Thus, the Court will not order the plaintiffs to file one master superseding complaint at this stage. Nor will the Court order the plaintiffs to file an administrative master complaint at this stage. While such a document might have some utility as a "cheat sheet" of what is at issue in the case, it would take significant work to create it, and Defendants have not demonstrated the burden of referring to the separate complaints justifies requiring Plaintiffs to distill the complaints into one administrative summary.

At the hearing, counsel for Plaintiffs in *Suggs* action (Case No. 2:24-cv-02444)[12] explained that the various plaintiffs were already coordinating with each other, and that it was likely that the

---

[11] The Fifth Circuit noted in a footnote that "Even if we were to consider the allegations in O'Dwyer's individual complaint, we would still find that the district court properly granted judgment on the pleadings." *See re Katrina Canal Breaches*, 309 F. App'x at 837. But nevertheless, the broader point remains—that plaintiff's original allegations could be ignored because of the master complaint, which creates a risk of prejudice.

[12] Counsel for Plaintiffs in *Suggs* action (Case No. 2:24-cv-02444), Paul R. Kiesel, also explained in the hearing that he believed it would be efficient for the Court to appoint interim lead counsel or make a similar order. Mr. Kiesel argued that this would make the meet and confers as to a discovery plan (described below) more efficient. As the Court explained in the hearing, the Court is not inclined to require any plaintiffs to

various plaintiffs would voluntarily group their claims into one master complaint. Per counsel, this might result in one complaint for the Howse Plaintiffs and one complaint for all others, or might result in the other plaintiffs relinquishing certain claims and joining the Howse Plaintiffs' operative complaint. After discussion with the Court, all counsel agreed that this voluntary consolidation of complaints would not require any order of the Court, and that there was nothing preventing it. The Court wishes to emphasize that its Order here is not intended to preclude the various plaintiffs (either all of them or any subsets thereof) from voluntarily consolidating their complaints into one or several complaints. But the Court is not inclined to order the various plaintiffs to do so over the objection of the Howse Plaintiffs for the reasons described above.

The Motion is DENIED as to the request for a master complaint. The Court will, however, require the parties to coordinate with respect to any dispositive motions that are filed in the future. As described below, the Court is setting one deadline for a response to all of the complaints at issue. Should the Defendants seek to move to dismiss the any or all of the complaints, they are required to meet and confer with the various plaintiffs and present their grounds in one omnibus motion, handling all common issues together. The plaintiffs are required to file one omnibus response, handling all common issues together, and identifying which parts of the responses, if any, are unique to a particular plaintiff. The parties shall meet and confer and attempt to stipulate in advance to a briefing schedule and appropriate page limits. A similar process shall be filed for any and all dispositive motions, including any motions for summary judgment, which per this Court's standing order, require joint briefing.

### C. The Court will temporarily stay discovery.

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "A trial court may, with propriety,

---

relinquish control over their cases without a stipulation or a formal motion for appointment of lead counsel (and the Court makes no finding on whether such a motion would be proper in the non-class action context). But if the various plaintiffs wish to stipulate to appointment of interim or permanent lead counsel, or to move for such an appointment, the Court will review the filings and make an appropriate order.

find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 865 (9th Cir. 1979). Whether to stay a case is left to the "sound discretion" of a trial court. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Before granting a stay upon a party's request, a court should weigh "the competing interests which will be affected by the granting or refusal to grant," including "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005).

The Court first notes, as background, that this Court's general practice in civil cases is not to set a scheduling conference or enter a scheduling order until an answer is filed and to not allow discovery prior to the issuance of a scheduling order. This practice is of course subject to change based on the unique needs and circumstances of each case.

Here, as discussed in further detail below, the Court intends to grant the Howse Plaintiffs leave to amend, and to allow all other plaintiffs to file amended complaints if they so desire based on the guidance in the Court's Order here. The Court will stay discovery to permit the various plaintiffs to consider whether and how they intend to amend and/or consolidate their complaints. But the Court will allow discovery to commence prior to a scheduling conference or the issuance of a scheduling order given the nature of this case, particularly given the time that actions have already been pending,[13] that it appears that a large amount of discovery will be required, and that discovery may take longer given that the need to coordinate. Accordingly, discovery is STAYED only until a discovery plan is in place (either agreed-upon by the parties or entered by this Court or the assigned magistrate judge). The parties are ORDERED to begin meeting and conferring now as to a plan for

---

[13] At the hearing, Defendants stressed that this is not a typical case with respect to discovery, in that the various regulatory agencies are overseeing the Landfill and there is a large amount of frequently updated public data on what is occurring there. While this may be true, the Court does not find it dispositive as to whether or how long discovery should be stayed.

discovery, given that all parties at the hearing were amenable to starting to meet and confer now.[14] They are ORDERED to file a status update after doing so as described in the conclusion of this Order, and the actual propounding of discovery will not begin until such a plan is entered by this Court (or the assigned magistrate judge)—either approving an agreement of the parties or ruling on disputed proposals.

The Court notes that Defendants requested a stay of discovery until "all parties are in front of this Court" (in other words, until all actions that will be filed have been filed and have been transferred to this Court). *See* ECF No. 77 at 20. The Court is not inclined to take this approach, because it would result in a delay of uncertain length. It is not clear to the Court how the Court will know when this threshold has been reached, as it is difficult to predict whether more actions will be filed in the future.

Thus, the Motion is GRANTED IN PART as to the request for a stay of discovery.

## REQUEST FOR JUDICIAL NOTICE (ECF NO. 76)

### I.    Applicable Law

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) ("Rule 201"). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).  Once a fact is judicially noticed, the court "must instruct the jury to accept the noticed fact as conclusive." Fed. R. Evid. 201(f).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011)

---

[14] At the hearing, the Court and the parties discussed a proposal whereby discovery would "open" without a plan in place, and that the first step of discovery would be to negotiate a plan (and no discovery could be propounded until the plan was in place). The Court's Order here is slightly different—the parties are to immediately begin meeting and conferring as to a discovery plan, and discovery shall remain stayed until a plan is approved. The Court finds this approach clearer.

(quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint may be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006)). A court considering a motion to dismiss may also take judicial notice of "matters of public record," "but not of facts that may be subject to reasonable dispute." *See id.* (citing *Lee*, 150 F.3d at 689). A court considering a motion to dismiss may not, "on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed" *Id.*

A court considering a motion to dismiss should not take judicial notice of material that cannot be considered for the motion. *See Lee*, 250 F.3d at 689–90.

## II.   **Discussion**

Defendants request judicial notice of four documents:

1.   April 24, 2024, Stipulated Order for Abatement (Case No. 6177-4) issued by the South Coast Air Quality Management District ("South Coast AQMD"). *See* ECF No. 76-1.

2.   June 2, 2024, Order from the County Health Department on behalf of CalRecycle. *See* ECF No. 76-2.

3.   Unilateral Administrative Order ("UAO") issued by the United States Environmental Protection Agency ("EPA") on February 21, 2024. *See* ECF No. 76-3.

4.   A screenshot of the "Enforcement" page on the South Coast AQMD website. *See* ECF No. 76-4.

The Court finds it appropriate to take judicial notice of all of these items. All of them are public records or otherwise capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Corinthian Colleges*, 655 F.3d at 998; Fed. R. Evid. 201(b). The Howse Plaintiffs do not oppose the Request for Judicial Notice of question the authenticity of any of the documents. Thus, the Court sees no basis on which to deny the Request for Judicial Notice. However, the Court will only take notice that these documents exist, and will not

1  take notice of any potentially disputed facts within the documents. *See Corinthian Colleges*, 655

2  F.3d at 999.

3       Thus, the Request for Judicial Notice is GRANTED.

4  **MOTION TO DISMISS (ECF NO. 75)**

5    **I.**    <u>**Applicable Law**</u>

6       Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to

7  state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

8  dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

9  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.

10 Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

11 pleads factual content that allows the court to draw the reasonable inference that the defendant is

12 liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

13      The determination of whether a complaint satisfies the plausibility standard is a "context-

14 specific task that requires the reviewing court to draw on its judicial experience and common sense."

15 *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view

16 them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir.

17 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to

18 accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting

19 *Twombly*, 550 U.S. at 555).

20      As a general rule, leave to amend a dismissed complaint should be freely granted unless it is

21 clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St.

22 Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

23   **II.**    <u>**Discussion**</u>

24      For the reasons discussed below, the Court will GRANT the Motion to Dismiss IN PART.

25 The Court finds that the Howse Plaintiffs have not sufficiently alleged alter ego liability, and so will

26 dismiss the claims to the extent they rely on this theory and grant the Howse Plaintiffs leave to

27 amend. The Court will not dismiss any claim based on the other arguments Defendants raise.

28      **A.  The Howse Plaintiffs have not alleged sufficient facts for alter ego liability.**

24

The Howse Plaintiffs allege that Chiquita LLC, Chiquita Inc., and Waste Connections are each "the alter ego of each other entity."[15] If the entities are all alter egos of each other, then they all might be liable for each other's conduct. *See S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir.), *opinion amended on denial of reh'g sub nom. Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003*)* ("California law recognizes an alter ego relationship, such that a corporation's liabilities may be imposed on [another]"). Defendants argue that the Howse Plaintiffs have not alleged alter sufficient facts to support a finding of alter ego liability between the Defendants. *See* ECF Nol 75-1 at 19–23. The Court finds the allegations sufficient as discussed below.

An alter ego relationship under California law requires two elements: 1) "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Id.* Courts look at several factors to consider whether entities are alter egos of one another, including:

> commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.

*Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000). Court also at times consider "inadequate capitalization, disregard of corporate formalities, [and] lack of segregation of corporate records". *Id.* "No one characteristic governs", but the courts must look at all the circumstances to determine whether the doctrine should be applied." *Id.* "Alter ego is an extreme remedy, sparingly used." *Id.*

At the motion to dismiss stage, district courts within the Ninth Circuit often apply a "lenient standard" to allegations of alter ego liability, allowing claims to proceed on such a theory where the plaintiff has pleaded facts regarding only some of the factors relevant to the first element. *See Parker*

---

[15] The allegation is a legal conclusion, and so the Court is not obligated to accept it. *See Iqbal*, 556 U.S. at 678. The same is true of the other portions of the same sentence: "Waste Connections, Chiquita Canyon, Inc., and Chiquita Canyon, LLC at all relevant times had a unity of interest and ownership such that any individuality and separateness between them has ceased." *See* TAC ¶ 21.

*v. Country Oaks Partners, LLC*, 2023 WL 3149330, *3 (C.D. Cal. Mar. 22, 2023); *see also, e.g.*, *Unichappell Music, Inc. v. Modrock Prod., LLC*, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015). In applying this standard, courts reason that defendant corporations may control the key evidence related to alter ego liability, and thus the plaintiff should only be required to plead minimal facts prior to discovery. *See id.* However, courts nevertheless essentially all agree that "[c]onclusory allegations of 'alter ego' status are insufficient to state a viable claim" and "a plaintiff must allege specific facts supporting *both* of the elements of alter ego liability" to state a claim under this theory. *See Parker*, 2023 WL 3149330 at *3 (quoting *Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, 2015 WL 13333486, at *5 (C.D. Cal. Sept. 24, 2015)) (emphasis added); *see also Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1117 (C.D. Cal. 2003) (finding that although the plaintiff pleaded facts sufficient for the first element, the plaintiff failed to plead facts as to the second element, and so had not adequately alleged the theory).

The Howse Plaintiffs alleged the following facts that are relevant to this issue: Waste Connections is the "sole owner" of Chiquita Inc. *See* TAC ¶ 17. Chiquita Inc. is the sole member of Chiquita LLC. *See id.* ¶ 18. Defendants operate the Landfill, and "Waste Connections exercises significant control of Chiquita Canyon, Inc. and Chiquita Canyon, LLC, including but not limited to the general management of, and daily activities at, the Landfill." *See id.* ¶¶ 19–20. "Waste Connections, Chiquita Canyon, Inc., and Chiquita Canyon, LLC present themselves to the public as one entity," including because "the Chiquita Canyon Landfill website is entitled 'Chiquita Canyon A Waste Connections Company.'" *See id.* ¶¶ 22, 23. All three Defendants share the same office and the same executive management team. *See id.* ¶¶ 24, 25. Some employees that operate the Landfill are employees of Waste Connections rather than Chiquita LLC. *See id.* ¶¶ 29–32.

The Court finds these allegations insufficient. The Howse Plaintiffs failed to allege any facts in support of the second element[16]—that adhering to separate identities would "sanction a fraud or

---

[16] The Court finds the allegations sufficient as to the first element, unity of control. At this stage, the Howse Plaintiffs need only allege facts related to some of the several considerations relevant to this element, as discussed above. *See Parker*, 2023 WL 3149330 at *3. Drawing all inferences in favor of the Howse Plaintiffs, the Court finds the allegations of identical ownership, shared offices, overlapping

promote injustice." *See Hickey*, 322 F.3d at 1128. The fraud or inequity must be "that of the party against whom the alter ego doctrine is invoked" and that party "must have been an actor in the course of conduct constituting the abuse of the corporate privilege." *See Firstmark Cap. Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988). There are no allegations in the TAC that support the inference that any of the three Defendants have abused the corporate privilege such that a fraud or inequity will result. For example, there are no allegations that any corporation is undercapitalized, that the corporations have disregarded formalities, or that funds were used by any corporation for an improper purpose. *See id.* (finding alter ego based on considerations including these). The Howse Plaintiffs must allege more facts along these lines if they wish to rely on alter ego liability. The Howse Plaintiffs do not attempt to argue otherwise in their Opposition, and instead just argue that alter ego is unnecessary as the claims are sufficiently pleaded either way. *See* ECF No. 79.

Because the Howse Plaintiffs have failed to allege alter ego liability, the Court must consider the separate existence of each Defendant and determine whether the Howse Plaintiffs have sufficiently alleged their claims against each of the Defendants individually.

The Court will grant Defendants leave to amend their claims to further allege facts related to alter ego liability if they desire, as described in the conclusion of this Order. *See Manzarek*, 519 F.3d at 1031 (leave to amend a should be freely granted unless it is clear the complaint could not be saved by any amendment).

**B. The Howse Plaintiffs have sufficiently alleged their claims against each Defendant.**

Defendants argue that absent alter ego liability, all of the claims fail against Chiquita Inc. and Waste Connections (which Defendants refer to as the "WC-Entities," distinct from Chiquita LLC). *See* ECF No. 75-1 at 23–24. The Court finds otherwise.

District courts generally hold that Federal Rule of Civil Procedure 8 requires a plaintiff to "allege the basis of his claim against *each defendant*." *See Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057 (E.D. Cal. 2012) (citing various authorities) (emphasis added). Here, the Howse Plaintiffs

---

employees/directors, and holding out to the public that the entities are related sufficient at this stage. *See* TAC ¶¶ 19–33.

alleged that all three Defendants "operate" the Landfill, and that Waste Connections "exercises significant control of" the Landfill. *See* TAC ¶¶ 19, 20. The Howse Plaintiffs further allege that employees of Waste Connections work at the Landfill. *See* TAC ¶¶ 29–32.

At this stage, drawing all inferences in favor of the Howse Plaintiffs, the Court finds these allegations sufficient to find each Defendant potentially individually liable for what occurred at the Landfill. Defendants are on notice as to what they are accused of doing—namely, operating the landfill in a negligent fashion that created a nuisance. Although the TAC does not contain a great deal of detail as to the role each Defendant played, it is not surprising that the Howse Plaintiffs lack this detail at this stage. The Court finds that the allegation that all three Defendants together operated the landfill plausible at this stage, particularly given the allegation of overlapping employees working at the landfill (*see* TAC ¶¶ 29–32). Discovery may eventually fail to uncover evidence that some Defendants were actually involved in operations, and the Howse Plaintiffs will need to show conduct by each Defendant in order to hold each on liable, but at this stage, the allegations are sufficient to proceed.

### C. The Court will not dismiss the negligence per se theory.

Defendants argue that "Plaintiffs' negligence per se cause of action should be dismissed without leave to amend." *See* ECF No. 75-1 at 12–13. Defendants first argue that negligence per se is not a standalone cause of action, and then argue that negligence per se cannot apply to the facts alleged here. The Court reads this as a theory rather than a cause of action, and finds that it could apply, and thus sees no grounds to dismiss it.

Negligence requires: "(a) a legal duty to use due care; (b) a breach of such legal duty; and (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 911 P.2d 496, 498 (1996). Negligence per se is an evidentiary presumption which "creates a presumption of negligence" if certain elements are met. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006). The failure to exercise due care (the second element of negligence) can be presumed if the following elements are shown: (1) the defendant "violated a statute, ordinance, or regulation of a public entity;" (2) the "violation proximately caused death or injury to person or property;" (3) the "death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation

was designed to prevent;" and (4) the "person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." *See Elsner v. Uveges*, 102 P.3d 915, 927 n.7 (2004). But negligence per se does not, on its own, lead to liability—the plaintiff still must prove all elements of negligence but may use negligence per se to do so. *See Quiroz*, 140 Cal. App. 4th at 1285 (meeting the elements of negligence per se "alone does not entitle a plaintiff to a presumption of negligence in the absence of an underlying negligence action . . . . Instead, [the doctrine] operates to establish a presumption of negligence [for the purpose of] providing evidence of an element of a preexisting common law cause of action."). In other words, negligence per se may be used to prove the elements of negligence above—particularly breach of duty—but is not a standalone claim. Defendants point to various authorities standing for this principle that negligence per se is not a standalone cause of action, and the Court agrees.

Here, the Howse Plaintiffs do not bring negligence per se as a standalone cause of action. Instead, they bring it as a subpart within their negligence cause of action. The Court reads this as an attempt by the Howse Plaintiffs to put Defendants on notice that the Howse Plaintiffs may seek to use the theory of negligence per se to prove the negligence cause of action. A complaint is required to give Defendants notice of the grounds for relief, and Defendants have provided no authority that including detail as to one possible theory in order to provide notice is improper. Thus, the Court will not dismiss negligence per se on the grounds that it cannot be a cause of action.[17]

Defendants further argue that negligence per se is inapposite to these facts because the alleged violations do not give rise to private causes of action. *See* ECF No. 75-1 at 13. This argument fails. Negligence per se can give rise to a negligence cause of action even if the underlying statute does not include a private rise of action. *See Sierra-Bay Fed. Land Bank Assn. v. Superior*

---

[17] At the hearing, Defendants expressed concern that the Howse Plaintiffs will seek to use negligence per se to achieve a double recovery (recovering once for common law negligence and then recovering again for negligence per se). The Howse Plaintiffs conceded that this would likely be inappropriate and explained that this is not their intention. The Court makes no ruling on this issue, but nothing in this Order is intended to suggest that the Howse Plaintiffs may recover twice for the same harms through negligence and negligence per se.

*Ct.*, 227 Cal. App. 3d 318, 333 (Ct. App. 1991) ("The adoption of a statutory standard of conduct in a negligence action may well result in the imposition of liability where none might otherwise be imposed . . . it is the tort of negligence, and not the violation of the statute itself, which entitles a plaintiff to recover civil damages."). The statute may be used to establish a standard of care, and by relying on the statute, the plaintiff may be able to convince a jury that the standard of care is higher than what the jury might otherwise find a reasonable person would do. *See id.* This does not require that the statute itself include a private right of action. Defendants point to one nonbinding case that appears to hold the opposite—*Venture General Agency, LLC v. Wells Fargo Bank, N.A.*, where a court in the Northern District of California held that a plaintiff could not base a negligence per se claim on a bank's failure to abide by the Bank Secrecy Act's reporting requirements because "a defendant's liability for failure to comply is to the United States government," and there is no private right of action. *See Venture Gen. Agency, LLC v. Wells Fargo Bank, N.A.*, Case No. 19-CV-02778, 2019 WL 3503109, *7 (N.D. Cal. Aug. 1, 2019). The Court reads this decision as distinguishable in that it analyzed the Bank Secrecy Act's requirements in detail, and did not consider other statutes or regulations that are more directly intended to protect individuals instead of protecting the government's interest in mitigating money laundering by requiring reporting by banks. *See id.* The Court is aware of no authority generally holding that negligence per se requires that the underlying statute or rule create a private right of action.

Thus, negligence per se will not be dismissed.

**D.  The Howse Plaintiffs have not pleaded sufficient facts to support punitive damages.**

The Howse Plaintiffs seek punitive damages on all three of their claims. *See* TAC ¶¶ 10, 174, 186, 199. Defendants argue that the facts alleged cannot support such damages and so this request should be dismissed. *See* ECF No. 75-1 at 13–18. The Court finds that the Howse Plaintiffs' allegations are not sufficient, and so will dismiss the prayers for punitive damages.

California law generally "does not favor the imposition of punitive damages," and such damages should "only be allowed in the 'clearest of cases.'" *Woolstrum v. Mailloux*, 141 Cal. App. 3d Supp. 1, 9 (App. Dep't Super Ct. 1983). A plaintiff may recover such damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or

malice." *See* Cal. Civ. Code § 3294(a). "Mere spite or ill will is not sufficient; and mere negligence, even gross negligence is not sufficient to justify an award of punitive damages." *Ebaugh v. Rabkin*, 22 Cal. App. 3d 891, 894 (Ct. App. 1972). The alleged conduct "must not only be willful in the sense of intentional, but it must also be accompanied by aggravating circumstances, amounting to malice." *See id.* Further, in order to win punitive damages against a corporate defendant, the plaintiff must show "proof of malice among corporate leaders: the officers, directors, or managing agents." *See Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (Ct. App. 2000) (internal alterations omitted).[18]

The general rules articulated in *Twombly* and *Iqbal* apply to pleading punitive damages. Defendants argue that the Howse Plaintiffs' allegations on this issue are "conclusory" and fall short of this standard. *See* ECF No. 75-1 at 14–15. Plaintiffs respond that there is a "low bar" to properly plead punitive damages, and point to district court cases that cited Federal Rule of Civil Procedure 9, which states that "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* ECF No. 79 at 16; Fed. R. Civ. P. 9(b); *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 918 (N.D. Cal. 2015). Defendants in turn respond that Plaintiffs' cases are incorrect in that those cases are the progeny of a pre-*Twombly* case. *See* ECF No. 84 at 4. The Court's understanding is that this purported disagreement misses the mark—it is not a binary where either *Twombly*/*Iqbal* or Rule 9(b) apply; both of these authorities are binding and apply to pleadings of punitive damages. The Court need not settle the exact contours of how these two interact, because as described below, the Court finds that the Howse Plaintiffs have not made a sufficient allegation of malice or a similar state of mind by a corporate leader.

First, drawing all inferences in favor the Howse Plaintiffs, the TAC includes facts (and not just conclusory statements) that the Court finds could support a finding of malice sufficient for punitive damages (if it were enough to allege malice by Defendants without pointing to a corporate leader). Nonintentional torts may support punitive damages "when the conduct constitutes conscious disregard of the rights or safety of others." *See SKF Farms v. Superior Ct.*, 153 Cal. App. 3d 902,

---

[18] The Howse Plaintiffs argue that several federal courts have held, in nonbinding opinions, that generalized allegations of malice are sufficient at the pleading stage as to punitive damages. *See* ECF No. 79 at 16–17. The Court need not reach this question, as the Court finds the specific factual allegations sufficient.

907 (Ct. App. 1984). The Howse Plaintiffs have alleged facts that if proven could show such conscious disregard. The Howse Plaintiffs allege that that many people lived near the landfill, as Defendants were presumably aware (*see* TAC ¶¶ 36, 37). The Howse Plaintiffs allege that Defendants failed to alert these people and relevant authorities of issues with leachate production and collection. *See* TAC ¶¶ 123–130. The Howse Plaintiffs further allege that Defendants illegally dumped leachate into a local river when Defendants could not find another means to dispose of it. *See* TAC ¶ 142. The Court need not analyze further—these are enough that a jury could conclude that Defendants consciously disregarded the safety of people living near the landfill. The Howse Plaintiffs will of course need proof to eventually win punitive damages, and will need to contend with the stringent requirements described above, but at this stage, these allegations would be sufficient to  survive a motion to dismiss.

However, the Court finds that the Howse Plaintiffs have not made sufficient allegations that any corporate leader had the requisite state of mind. *See Cruz*, 83 Cal. App. 4th at 167 (there must be "proof of malice among corporate leaders: the officers, directors, or managing agents"). The TAC does not contain any allegations regarding any corporate leaders' involvement in the alleged conduct or approval of the alleged conduct. The Howse Plaintiffs argued in their opposition and at the hearing that the conduct alleged could only have occurred if a corporate leader approved of it. The Howse Plaintiffs further noted that at this stage, it would be difficult for them to gain insight into what corporate leaders may have been involved and to allege as such. While each of these may be true, the Howse Plaintiffs still must allege, at minimum, that a corporate leader had the requisite malice. The cases cited to the contrary are pre-*Iqbal/Twombly* (or rely on standards other than *Iqbal/Twombly*) and therefore are inapposite as to what must be pleaded with respect to the corporate leaders.

The Howse Plaintiffs pointed in the hearing to several allegations that they argue show inevitable corporate involvement. In particular, the Howse Plaintiffs stressed the following allegations: Defendants were obligated to manage and monitor leachate, Defendants did not report issues with leachate even after other issues arose and the Landfill was being closely monitored, regulators discovered the leachate problem after seeing 18-foot leachate geysers, Defendants tried

various means to dispose of the leachate that were unsuccessful, and Defendants eventually resorted to dumping leachate in a river illegally. *See* TAC ¶¶ 124–142. The Howse Plaintiffs argue that in context, corporate leaders must have been aware of and interested in the leachate problem, and that this could only have occurred with corporate leaders' involvement. But the TAC does not actually allege this. The Howse Plaintiffs have not alleged that any corporate leader (or even Defendants as a whole) were aware of the leachate problem before regulators discovered it, and instead only include allegations that they argue suggest inevitable knowledge (e.g., that Defendants were aware of other problems and did not report the obvious leachate issue that regulators eventually found, *see* TAC ¶¶ 124–130). Nor do the Howse Plaintiffs allege that any corporate leader authorized or encouraged the illegal leachate dumping in the river, or any of the other unsuccessful attempts to manage the leachate. It is possible that this occurred at the discretion of a low or mid-level employee that would not qualify as a corporate leader, and the Court finds that it is a bridge to far to draw an inference of a corporate leader's involvement when there is no allegation of it. Thus, the Howse Plaintiffs' allegations fall short.

Thus, the Court will dismiss the prayers for punitive damages as to all causes of action. Dismissal will be with leave to amend, as it appears that further allegations could cure this defect. *See Manzarek*, 519 F.3d at 1031.

## CONCLUSION

For the reasons stated herein, the Court ORDERS as follows:

1. The following actions shall be consolidated for pretrial purposes. The consolidated action shall be captioned: "*In re Chiquita Canyon Landfill Litigation*," with Case No. 2:23-cv-08380. These cases are not consolidated for trial purposes, and each suit included in this consolidated action retains its separate identity:

    a. *Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531;

    b. *Robert Aleksanyan et al v. Chiquita Canyon LLC et al*, Case No. 2:24-cv-04188;

    c. *Claudia Rivera et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06127;

d. *Quaiden Fenstermaker et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-
05910;

e. *Geon Hwang et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05715;

f. *Briana Mejia et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05921;

g. *John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444;

h. *Jolene Acosta et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05885;

i. *Scott Benjamin Siegal et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-
09152;

j. *Isabell Dolores Palomino et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-
05883;

k. *Adams T. Evans et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-05679;

l. *Anabel Austin et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06966;

m. *Melineh Gasparians et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-
07519;

n. *Kaden Alim et al v. Chiquita Canyon, LLC et al*, 2:24-cv-08342;

o. *Alejandra Suarez et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-06358;

p. *In Re Serieddine Consolidated Actions*, Case No. 2:24-cv-09296;

q. *Alina Hakopyan et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-09421;

r. *Nicholas Difatta et al v. Chiquita Canyon, LLC et al*, Case 2:24-cv-08582; and

s. *Serenity Araiza et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-04600.

2. All of the actions listed above, items (a)–(s), shall be STAYED, and no further filings
shall be made in those actions. Instead, filings should be made in the consolidated action,
*In re Chiquita Canyon Landfill Litigation*.

3. Every Pleading in the consolidated action shall bear the following caption:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re Chiquita Canyon Landfill Litigation | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Master File No. 2:23-cv-08380-MEMF-MAR |
| _____ | | |
| This Document Relates To: | | **CONSOLIDATED ACTION** |
| _____ | | |

4. The file in the consolidated action (Case No. 2:23-cv-08380) shall constitute a Master File for every action in the consolidated action. When the document being filed pertains to all actions, the phrase "All Actions" shall appear immediately after the phrase "This Document Relates To." When a pleading applies only to some, not all, of the actions, the document shall list, immediately after the phrase "This Document Relates To," the docket number for each individual action to which the document applies, along with the last name of the first-listed plaintiff in said action (*e.g.*, for a filing related to the *Suggs* action only, Case No. 2:24-cv-02444: "No. 2:24-cv-02444 (*Suggs*)").

5. The Request for Judicial Notice (ECF No. 76) is GRANTED.

6. The Motion to Dismiss (ECF No. 75) is GRANTED IN PART:

   a.  The Court finds the allegation of alter ego liability insufficiently pleaded, and will not allow claims to proceed on this theory.[19]

   b.  The Court finds that the allegations do not support punitive damages, and so the prayers for punitive damages are dismissed.

   c.  The Howse Plaintiffs are GRANTED LEAVE TO AMEND to address these issues if they so desire. Any amended complaint must be filed within forty-five (45) days of this Order.

   d.  The Motion to Dismiss is otherwise DENIED.

7. Plaintiffs in every consolidated case are GRANTED LEAVE TO AMEND their complaints pursuant to the Court's findings in this Order if they so desire. Any amended complaints must be filed within forty-five (45) days of this Order.

8. Unless the Court orders otherwise (in response to a stipulation or motion), Defendants' deadline to respond to the complaints in every consolidated action (including *Howse*) shall be ninety (90) days from the date of this Order (in other words, 45 days from the deadline to file amended complaints). This shall apply regardless of whether or when amended complaints are filed. This shall supersede all prior orders governing the deadline to respond.

   a.  If Defendants wish to file motions to dismiss or similar motions as to more than one of the complaints, they are required to do so via an omnibus motion (which Plaintiffs must collectively oppose via an omnibus opposition) as discussed above. The parties must meet and confer and attempt to agree on a briefing schedule and page limits in advance of this motion practice and must file a status update with the Court after this meet and confer.

9. Discovery is STAYED until an Order is issued putting in place a discovery plan.

---

[19] Because the Court found that no cause of action fails absent this theory, this holding does not lead to the dismissal of any cause of action. The same is true of the Court's dismissal of the prayers for punitive damages.

10. Plaintiffs and Defendants shall promptly meet and confer regarding a discovery plan and any other items they deem necessary to discuss.

11. The parties are ORDERED to file, within sixty (60) days of the date of this Order, a status update regarding their discussions on a discovery plan. This status update shall include either (A) a joint proposal as to a discovery plan, or (B) disputed proposals as to a discovery plan with brief summaries of the parties' positions.

12. The pending Motions to Consolidate in *Mariam Siryani et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-03531, ECF No. 25, and *John Suggs et al v. Chiquita Canyon, LLC et al*, Case No. 2:24-cv-02444, ECF No. 39, are DENIED AS MOOT in light of the Court's disposition of the instant Motion to Consolidate.

13. In the event that any further related cases are filed in, removed to, or transferred to this Court, the following procedure shall apply:[20]

    a. After any new case is transferred to Judge Frimpong, Defendants shall promptly serve upon the new plaintiffs a copy of this Order. Defendants shall then file a proof of service in the new case. The new plaintiffs shall have seven (7) days from the date of service to object to consolidation. If no objection is filed, the new case shall be automatically consolidated eight (8) days after the proof of service as to this Order is filed in the new case.

14. Plaintiffs and Defendants shall promptly meet and confer regarding a process for guardian ad litem petitions.

15. The parties are ORDERED to file, within thirty (30) days of the date of this Order, a status update regarding their discussions on a process for guardian ad litem petitions. This status update shall include either (A) a joint proposal as to a process for guardian ad litem petitions, or (B) disputed proposals as to a process for guardian ad litem petitions with brief summaries of the parties' positions.

---

[20] At the hearing, the Court gave all counsel present an opportunity to be heard on this procedure. No counsel objected the Court's proposal, which is reflected here.

IT IS SO ORDERED.

Dated: November 19, 2024

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge